## THE DELAMBRE.[*]

(*Circuit Court, D. Louisiana.* November 25, 1881.)

1. SALVAGE—CONTRACTS.

Contracts as to the *quantum* of compensation for salvage services are binding, provided they are reasonable, and without fraud or mistake.

2. SAME—SAME.

Such contracts, when made with the master of a salvage vessel, bind the vessel but not the crew, unless made with their consent.

In Admiralty. On appeal.

[*]Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

*Emmet D. Craig*, for libellants.

*R. de Gray*, for intervening appellants.

*W. S. Benedict*, for claimants.

PARDEE, C. J. The services rendered by the various tug-boats and vessels, and their officers and crews, in aid of the Delambre, were undoubtedly salvage services. So far as they were rendered under specific contracts, these contracts should be the guide in fixing the compensation for such salvage services, provided they are reasonable, and without fraud or mistake, and bearing in mind that contracts only bind parties and privies. A contract as to the *quantum* of salvage, made with the master of a salvage vessel, will bind the vessel but not the rest of the crew, if made without their sanction and concurrence. See *The Britain*, 1 W. Rob. 40; *The Sarah Jane*, 2 W. Rob. 110–115. And this rule is regarded in this court. The evidence in this case does not establish that the crew of the Harry Wright, the crew of the Ariel, or the tow-boat Confidence and her master and crew, were parties to any contracts, or sanctioned or concurred in any contracts, stipulating a quantum of compensation for salvage services rendered. The evidence is voluminous and conflicting, but this is the conclusion reached by Judge Billings, and I fully agree with him therein:

(1) The allowance made to the Confidence of $2,000 seems to be proper, considering the services rendered, and the circumstances of the service. The allowance of five-eighths to the boat and three-eighths to the crew, seems also properly proportionated. The services of the boat and her crew were not equal. The boat steamed a considerable distance, and helped to place the Ariel to receive cargo, all of which was ordinary service for the crew.

(2) The owners of the Harry Wright, the tow-boats Joseph Cooper, Jr., C. C. Keyser, George W. Childs, and Greyhound, all of which boats rendered and claimed salvage services in conjunction with each other, settled their claims for compensation with the claimants in this case for the sum of $3,300. This settlement seems to fix a fair allowance, and, considered in the light of an arbitration, may be taken as fixing the compensation of those boats and their crews. But of these services so rendered in conjunction, it seems that the Harry Wright's services were more valuable than any or all of the others. It was the Harry Wright that, after the others ceased operations, took off from the disabled ship nearly 600 bags of coffee and safely delivered it on the wharf at Port Eads, carrying it up South-west Pass and down South Pass. Of the $3,300 allowed all these boats, the Harry Wright should be regarded as entitled to at least $2,000; and that amount should be taken as the basis in fixing the compensation, which we have seen the crew are entitled to, notwithstanding the contracts of her owners and agents. Of this $2,000, three-eighths to the master and crew is a fair proportion, considering the extra services of the

boat in transporting cargo a long distance, where the services of the crew were ordinary services, within the scope of their duty.

(3) The allowance made to the Ariel of $1,000 is considered satisfactory; but the seven men taken aboard at Port Eads are entitled to their *pro rata* share of the one-half thereof belonging to the crew. They are before the court, and should be allowed the same as landsmen regularly shipped aboard the Ariel.

I only deem it necessary to say further in this case that, from the contracts made by the master and agents of the Delambre on one side and the tow-boats and tow-boat lines and Capt. Adams on the other, as they appear in the evidence, it seems that the Delambre is fully protected; and the real contest in this case is not interesting to that ship or her owners, but is really a contest among rival salvors as to the proper distribution of salvage compensation amicably agreed on, and therefore it is not necessary that this court should join the proctor of the ship in properly characterizing the greed and schemes and morals of many of the parties who have figured in the matter of salvage in this case.